## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| GREGORY MADURO, | Civil Action No. |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| S-2 INTERNATIONAL LLC, | |
| Defendant. | |

## COMPLAINT FOR DAMAGES

COMES NOW, Gregory Maduro ("Plaintiff" or "Mr. Maduro"), by and through his undersigned counsel, and files this, his Complaint for Damages against S-2 International LLC ("Defendant" or "S-2"), and shows the Court as follows:

## NATURE OF COMPLAINT

1.

Plaintiff brings this action for damages, liquidated damages, and reasonable attorneys' fees for Defendant's violation of his rights under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12111 *et seq.* ("ADA").

1

## JURISDICTION AND VENUE

### 2.

Plaintiff invokes the jurisdiction of this Court pursuant to 28 U.S.C. §§ 1331 and 1343, 42 U.S.C. § 12117, and 29 U.S.C. § 261(b).

### 3.

Defendant does business in this judicial district.  Additionally, the unlawful employment practices alleged in this Complaint were committed within this district.  In accordance with 28 U.S.C. § 1391, venue is appropriate in this Court.

## PARTIES

### 4.

Plaintiff is a citizen of the United States of America and a resident of the State of Georgia.  Plaintiff is subject to the jurisdiction of this Court.

### 5.

Defendant is a Domestic Limited Liability Company qualified and licensed to do business in Georgia, and at all times material hereto has conducted business within this District.

6.

Defendant may be served with process by delivering a copy of the summons and complaint to its Registered Agent, Jennifer L. Mead, 5916 East Lake Parkway, Suite 311, McDonough, GA 30253.

7.

At all such times, Plaintiff was also an "employee" of Defendant as defined under the ADA at 42 U.S.C. § 12111(4).

8.

During all times relevant hereto, Defendant has employed fifteen (15) or more employees for the requisite duration under the ADA.  Defendant is therefore covered under the ADA in accordance with 42 U.S.C. § 12111(5).

## **ADMINISTRATIVE PROCEDURES**

9.

Plaintiff timely filed a charge of discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") on May 8, 2020.

10.

The EEOC issued a "Notice of Right to Sue" on October 7, 2020, entitling an action to be commenced within ninety (90) days of receipt of that notice.

11.

This action has been commenced within ninety (90) days of receipt of the "Notice of Right to Sue."

## FACTUAL ALLEGATIONS

12.

Plaintiff began working for the Defendant as an independent contractor on or about February 2, 2018, prior to his being hired for the permanent position as Director of Sales and Marketing on August 10, 2018.

13.

Plaintiff previously served in the Army and due to injuries sustained while in the service, has permanent spinal injuries and nerve damage, which affect his mobility.

14.

Plaintiff disclosed the limitations of his disability to owners Jennifer Mead and Chris Mead (the "Meads") and supervisor, Brian Lawson, that due to these limitations, he could not be in the office 5 days a week but would be 2 days a week.  The Meads, and Brian Lawson, agreed to those employment terms.

15.

Plaintiff submitted a plan for Business Development and Marketing Director which included a future compensation plan.  This plan is referred to as the "original plan."  The Original Plan indicated Plaintiff would 1) build an outside and "inside" sales team, 2) would replace Plaintiff's commission structured compensation plan with a salary and the opportunity to earn bonuses on the company's and his sales team's performance, and 3) come into the office at least twice a week.

16.

The Meads and Brian Lawson, Plaintiff's immediate supervisor, agreed to the terms of the "original plan."

17.

In May 2019, Plaintiff spoke to his supervisor, Brian Lawson, and requested that the "original plan" be implemented.  Lawson agreed.

18.

Plaintiff was also the Inside Sales Manager.

19.

In September / October, 2019, Plaintiff pushed to hire a gentleman for his inside sales team.  Lawson chose to train this particular new sales hire, while

excluding Plaintiff from the training.  Plaintiff questioned Lawson and was told that the new hire would report to him due to his inability to be in the office five days a week.

20.

Lawson also informed Plaintiff that he would be taking over inside sales because he could not commute to the office 5 days a week.  Lawson took the position, which included a raise, from Plaintiff, due to his disability.

21.

On November 15, 2019, Plaintiff requested a meeting with the Meads, and Human Resources representative, Stephanie Muese, to discuss 1) Lawson's and the company's failure to follow company policy, 2) alleged HIPAA violations and 3) discrimination on account of his disability.

22.

On November 17, 2019, Plaintiff filed a complaint against the Vice President, Brian Lawson, with human resources asserting the company had discriminated against him because of his medical condition and policy violations.

23.

Plaintiff was informed that Jennifer Mead and Brian Lawson were to meet offsite on November 21, 2019 to discuss Plaintiff's claims of discrimination and concerns.  Muese confirmed the meeting.

24.

On November 21, 2019, Plaintiff and Jennifer Mead conferred, wherein she stated that she had prepared his review for his current position, but not his new job description.   Plaintiff learned that his current position had been eliminated. Plaintiff was presented with a new position, National Account Manager, which required outside sales 4 days per week, in the office 1 day a week and no marketing or management responsibilities.  The new position, which was to start January 6, 2020, required considerable travel, and also represented a substantial loss of income.

25.

Plaintiff complained during this meeting on November 21, 2020, that the new position did not accommodate his disability.   Plaintiff asked for the accommodation of traveling only 2 days a week, due to his medical condition, but the "new" position required that he travel 4 days per week.

26.

Chris Mead told Plaintiff that if he chose not to take this position, he would be terminated for refusing the position.

27.

Defendant was most definitely aware of Plaintiff's disability, therefore, deliberately forcing Plaintiff into a position they knew he could not perform due to his physical inability to do so.

28.

On November 21, 2020, Plaintiff was terminated because of his disability and complaints of discrimination due to his physical disability.

29.

The Defendant retaliated against Plaintiff for requesting to preserve a position for which he was hired, and one which allowed him accommodations. By forcing Plaintiff out of that position and stating that he either agree to a position with no accommodations or be terminated, the Defendant violated Plaintiff's rights under the ADA.

## CLAIMS FOR RELIEF

## COUNT I
## DISABILITY DISCRIMINATION IN VIOLATION OF ADA

30.

Plaintiff re-alleges the preceding paragraphs as if set forth fully herein.

31.

Plaintiff has physical impairments, which limited one or more major life activities, including but not limited to seeing, hearing, speaking, learning, reading, concentrating, thinking, communicating, and working.

32.

Plaintiff's physical impairments are "disabilities" within the meaning of the ADA, as amended.

33.

Defendant was aware of Plaintiff's disabilities.

34.

Defendant regarded Plaintiff as having a disability such that he is a person with a disability within the meaning of the ADA, as amended.

35.

Plaintiff has a record of having a disability such that he is a person with a disability within the meaning of the ADA, as amended.

36.

At all times relevant to this action, Plaintiff was a qualified individual with a known or perceived disability as defined in the ADA.

37.

Defendant terminated Plaintiff's employment because of his disability, perceived disability, or record of having a disability.

38.

Defendant terminated Plaintiff's employment shortly after Plaintiff requested a compensation plan be implemented and complained of disability discrimination.  The "original" plan included that he maintain his position, which allowed him an accommodation due to his disability and had previously been agreed upon.

39.

By terminating Plaintiff's employment because of his disability, perceived disability, or record of having a disability, Defendant violated the ADA, as amended.

40.

Defendant treated other employees outside Plaintiff's protected class differently.

41.

Defendant's actions in subjecting Plaintiff to different terms and conditions of employment constitutes unlawful discrimination on the basis of this violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12111 *et seq.*, 42 U.S.C. §2000e et seq. and 42 U.S.C. §1981A.

42.

Defendant has willfully and wantonly disregarded Plaintiff's rights, and Defendant's discrimination against Plaintiff was undertaken in bad faith.

43.

The effect of the conduct complained of herein has been to deprive Plaintiff of equal employment opportunity, and has otherwise adversely affected his status as an employee because of his disability.

44.

As a direct and proximate result Defendant's violation of the ADA, Plaintiff has been made the victim of acts that have adversely affected his psychological and physical well-being.

45.

As a result of Defendant's discriminatory actions against Plaintiff, he has suffered lost compensation and benefits, emotional distress, inconvenience, humiliation, and other indignities.

46.

Pursuant to the ADA, as amended, Plaintiff is entitled to damages including but not limited to back pay and lost benefits, reinstatement, compensatory damages, equitable relief, attorneys' fees, costs of litigation and all other relief recoverable under the ADA, as amended.

47.

Defendant discriminated against Plaintiff, and, in failing and refusing to take any appropriate remedial action to remedy the unlawful employment practices, has not only deprived Plaintiff of equal employment opportunities, but exhibited malice or reckless indifference to the federally protected rights of Plaintiff.

48.

Plaintiff thus seeks compensatory and punitive damages pursuant to §102(a)(1) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(b).

## COUNT II
## FAILURE TO ACCOMMODATE IN VIOLATION OF ADA

49.

Plaintiff re-alleges the preceding paragraphs as if set forth fully herein.

50.

Plaintiff has physical impairments, which limited one or more major life activities, including but not limited to seeing, hearing, speaking, learning, reading, concentrating, thinking, communicating, and working.

51.

Plaintiff's physical impairments are "disabilities" within the meaning of the ADA, as amended.

52.

Defendant was aware of Plaintiff's disabilities.

53.

At all times relevant to this action, Plaintiff was a qualified individual with a known or perceived disability as defined in the ADA.

54.

Plaintiff was able to perform the essential functions of his job with a reasonable accommodation.

55.

Plaintiff requested that Defendant accommodate his disability by allowing him to maintain a position for which he was hired, affording him an accommodation.

56.

Upon receiving Plaintiff's requests, Defendant failed to engage in any interactive process with Plaintiff regarding his request due to his disability.

57.

Defendant refused to continue to provide Plaintiff with reasonable accommodations, even though to do so would not impose an undue hardship.

58.

By refusing to accommodate Plaintiff, Defendant violated the ADA, as amended.

59.

Defendant has willfully and wantonly disregarded Plaintiff's rights, and Defendant's failure to accommodate Plaintiff's disability was undertaken in bad faith.

60.

The effect of the conduct complained of herein has been to deprive Plaintiff of equal employment opportunity, and has otherwise adversely affected his status as an employee because of his disability.

61.

As a direct and proximate result Defendant's violation of the ADA, Plaintiff has been made the victim of acts that have adversely affected his psychological and physical well-being.

62.

As a result of Defendant's discriminatory actions against Plaintiff, he has suffered lost compensation and benefits, emotional distress, inconvenience, humiliation, and other indignities.

63.

Pursuant to the ADA, as amended, Plaintiff is entitled to damages including but not limited to back pay and lost benefits, reinstatement, compensatory damages, equitable relief, attorneys' fees, costs of litigation and all other relief recoverable under the ADA, as amended.

64.

Defendant discriminated against Plaintiff, and, in failing and refusing to take any appropriate remedial action to remedy the unlawful employment practices, has not only deprived Plaintiff of equal employment opportunities, but exhibited malice or reckless indifference to the federally protected rights of Plaintiff.

## COUNT III
## RETALIATION IN VIOLATION OF THE ADA, AS AMENDED

65.

Plaintiff re-alleges the preceding paragraphs as if set forth fully herein.

66.

Plaintiff has physical impairments which substantially limit one or more major life activities including but not limited to concentrating, thinking and working.

67.

Plaintiff's physical impairments are "disabilities" within the meaning of the ADA, as amended.

68.

Defendant was aware of Plaintiff's disabilities.

69.

At all times relevant to this action, Plaintiff was a qualified individual with a known or perceived disability as defined in the ADA.

70.

Defendant terminated Plaintiff for requesting to maintain the job position for which he was hired, which allowed him an accommodation for his disability and/or perceived disability.

71.

Plaintiff's request for an accommodation of his disability and/or perceived disability constitutes protected conduct under the ADA, as amended.

72.

Defendant retaliated against Plaintiff by terminating his employment on the basis of his request for an accommodation.

73.

Defendant terminated Plaintiff's employment within a close temporal proximity to Plaintiff's accommodation requests and complaints of discrimination based on his disability.

74.

Defendant's proffered reasons for terminating Plaintiff's employment are a pretext designed to hide Defendant's retaliatory motive.

75.

Defendant's retaliatory actions against Plaintiff were in violation of the ADA, as amended.

76.

Defendant willfully and wantonly disregarded Plaintiff's rights, and Defendant's retaliation against Plaintiff was undertaken in bad faith.

77.

As a result of Defendant's retaliatory actions against Plaintiff, he has suffered lost compensation and benefits, emotional distress, inconvenience, humiliation, and other indignities.

78.

Pursuant to the ADA, as amended, Plaintiff is entitled to damages including but not limited to back pay and lost benefits, reinstatement, compensatory damages, equitable relief, attorneys' fees, costs of litigation and all other relief recoverable under the ADA, as amended.

79.

Defendant discriminated against Plaintiff, and, in failing and refusing to take any appropriate remedial action to remedy the unlawful employment practices, has not only deprived Plaintiff of equal employment opportunities, but exhibited malice or reckless indifference to the federally protected rights of Plaintiff.

80.

Plaintiff thus seeks compensatory and punitive damages pursuant to §102(a)(1) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(b).

**WHEREFORE**, Plaintiff judgment as follows:

(a)    A declaratory judgment that Defendant has engaged in unlawful employment practices in violation of the ADA;

(b)    Injunctive relief of reinstatement, or front pay in lieu thereof, and prohibiting Defendant from further unlawful conduct of the type described herein;

(c)    General damages for mental and emotional suffering caused by Defendant's misconduct;

(d)    Punitive damages based on Defendant's willful, malicious, intentional, and deliberate acts, including ratification, condonation and approval of said acts;

(e)         Special damages and/or liquidated damages for lost wages and

            benefits and prejudgment interest thereon;

(f)         Trial by jury as to all issues;

(g)         Prejudgment interest at the rate allowed by law; and

(h)         All other relief to which he may be entitled.

Respectfully submitted the 20th day of November, 2020.

**BARRETT & FARAHANY**

 s/ *Ian E. Smith*_____
Ian E. Smith
Georgia Bar No. 661492

*Attorney for Gregory Maduro*

1100 Peachtree Street, N.E., Suite 500
Atlanta, GA 30309
(404) 214-0120
(404) 214-0125 Facsimile
iesmith@justiceatwork.com

Filename:           00477921.DOCX
Directory:          C:\Users\marilyn\Documents
Template:
                    C:\Users\marilyn\AppData\Roaming\Microsoft\Templates\Normal.
    dotm
Title:              Maduro - Draft Complaint (00477921).DOCX
Subject:
Author:             Ian E. Smith
Keywords:
Comments:
Creation Date:      10/28/2020 1:13:00 PM
Change Number:      13
Last Saved On:      11/20/2020 10:03:00 PM
Last Saved By:      Marilyn D. Schmitt
Total Editing Time: 1,194 Minutes
Last Printed On:    11/20/2020 10:04:00 PM
As of Last Complete Printing
    Number of Pages: 20
    Number of Words:        2,530 (approx.)
    Number of Characters:   14,145 (approx.)